FILED
CLERK
1:36 pm, Feb 20, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TYRONE PAGE,

                Plaintiff,            **MEMORANDUM & ORDER**
                                                 16-CV-4710 (SJF)(GRB)

      v.

HALF HOLLOW HILLS CENTRAL SCHOOL
DISTRICT, PATRICK HARRIGAN, and STEPHEN
TROY, in their respective individual and official
capacities,

                Defendants.
----------------------------------------------------------------X
FEUERSTEIN, District Judge:

      Plaintiff Tyrone Page ("Plaintiff" or "Page") commenced this action against his former employer, defendant Half Hollow Hills Central School District (the "District"), and District employees Patrick Harrigan ("Harrigan"), and Stephen Troy ("Troy") (collectively "Defendants"), alleging discrimination and harassment/hostile work environment based on his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.* and 42 U.S.C. §1981. Currently before the Court is Defendants' motion for summary judgment. Motion, Docket Entry ("DE") [25]. For the reasons set forth below, the motion is granted.

**I. BACKGROUND**

**A. Factual History[1]**

      The facts are undisputed unless otherwise noted. Plaintiff has denied several statements in Defendants' 56.1 Statement without citation to evidence as required by Local Rule 56.1(d). In

---

[1]The facts are drawn from Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Def. 56.1 Stmt"), DE [25-27]; the Declaration of Joshua S. Shteierman in Support of Defendants' Summary Judgment Motion ("Shteierman Decl."), DE [25-1]; Plaintiff's Statement of Undisputed Material Facts

the absence of reference to evidence, these statements are not considered disputed. *See Feis v. United States,* 394 F. App'x 797, 799-800 (2d Cir. 2010) (summary order) (affirming district court decision declining to consider as disputed "any statement supported by admissible evidence to which Plaintiff objects, *but does not support with evidence* . . . in perfect accordance with Local Civil Rule 56.1(d)" (internal citations omitted, emphasis in original)).

1. Defendants' Undisputed Facts

Defendant Troy was hired by the District as the Supervisor of Transportation on June 29, 2000. Def. 56.1 Stmt. ¶2. At the time of his hiring, Troy supervised approximately 85 bus drivers, three staff members, and five mechanics; at the time of his retirement in 2016, Troy supervised approximately 50 bus drivers, three or four staff members, and six mechanics. *Id.* ¶3.

Defendant Harrigan was hired by the District in July 2005 as the Assistant Superintendent for Research Assessment and Special Services, and became Assistant Superintendent for Districtwide Administration in September 2011. Def. 56.1 Stmt. ¶¶ 6-7. On July 1, 2013, Harrigan was named Deputy Superintendent. In addition to other responsibilities as Deputy Superintendent, Harrigan was in charge of Human Resources for the District, including but not limited to issuance of verbal warnings and written counseling memos for those District employees covered by a collective bargaining agreement. *Id.* ¶¶7-8. The District maintains nine distinct bargaining units including ones for Teachers and Transportation. *Id.* ¶13.

---

Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 Stmt"), DE [26-3]; and the Declaration of Stephen McQuade in Opposition to Defendants' Motion for Summary Judgment ("McQuade Decl."), DE [26].

### a. Page's Hiring and Employment History

Page, who is Black, was first hired by the District in March of 2007 as a school bus driver. Def. 56.1 Stmt. ¶1. Page applied for the position and was interviewed by Troy and Kelly Fallon, who was then the Assistant Superintendent of Districtwide Administration. On March 12, 2007, Troy recommended Page to Fallon for the position of bus driver. *Id.* ¶20. On March 27, 2007, Fallon wrote Page to inform him that he had been approved for a probationary appointment to the position of Bus Driver, and that he would be on probation "for a period of not less than 8 weeks or more than 26 weeks." McQuade Decl. Ex. 5. By letter dated December 12, 2007, Fallon informed Page that he had been granted permanent status as a bus driver by the Board of Education. Def. 56.1 Stmt. ¶21; Shteierman Decl. Ex. G.

During the 2006/07 school year, Page worked as a 10-month employee, thirty hours per week, six hours per day. Def. 56.1 Stmt. ¶22. His morning run began at 6:30 a.m. and ended at approximately 9:20 a.m., and the afternoon run began at 1:45 p.m. and ended at approximately 4:30 p.m. *Id.* ¶23. Plaintiff continued working as a bus driver at the district for between 30 and 34 hours per week during the school years of 2007/08, 2008/09, 2009/10, 2010/11, 2012/13, 2013/14, and 2014/15. Def. 56.1 Stmt. ¶32. He received a pay raise every March from 2008 through 2015, inclusive. ¶35. Plaintiff was supervised by Troy throughout his employment with the District. *Id.* ¶36.

During the 2006/07 school year, Page, in addition to his bus driving duties, also worked in District cafeterias from 9:20 a.m. to approximately 1:45 p.m. Def. 56.1 Stmt. ¶25. He received this additional job from "Peggy," the food service supervisor who was Caucasian. *Id.* He also worked in the school cafeteria during the school years in 2007/08, 2008/09, and 2009/10, but chose not to work in the cafeteria during the 2010/11 school year. *Id.* ¶¶ 34-35. In

approximately 2012 or 2013, the District received complaints from the Teachers' Union regarding the use of non-union members to fill monitor positions that should go to dues-paying union members, resulting in the District's decision to phase out the practice of allowing bus drivers to serve as substitute monitors during the day. *Id.* ¶15.

> *b. Page's DWI Arrest*

On May 25, 2013 at 1:50 a.m., Page was observed making an illegal u-turn. Def. 56.1 Stmt. ¶38; Shteierman Decl., Ex. H, Misdemeanor Information. He was pulled over by a Suffolk County Police Officer who observed a strong odor of alcohol on Page's breath as well as bloodshot, glassy eyes, slurred mumbled speech, poor coordination, and that he was unsteady on his feet. *Id.* ¶¶ 38-39. A field sobriety test was performed, and a breathalyzer administered at the precinct showed a blood alcohol volume of .15%. *Id.* ¶40. Plaintiff was arrested and charged with Driving While Intoxicated ("DWI") and spent the night in jail. *Id.* ¶41. At his arraignment, Plaintiff was advised that his license had been suspended. *Id.* ¶43.

On May 28, 2013, the first work day after the arrest, Plaintiff telephoned Troy to inform him about the arrest. Def. 56.1 Stmt. ¶44. By letter dated May 28, 2013, the New York Department of Motor Vehicles, Bus Driver Unit ("DMV Bus Unit"), reported to the District that Page had been charged with a violation "which, upon conviction of same, will disqualify this driver from driving a school bus" pursuant to New York law. *Id.* ¶45; Shteierman Decl., Ex. I.

Page's license was restored in July 2013, but he did not learn of this fact until October 2013. Pl's 56.1 Stmt. ¶¶117-18. He contacted Troy in November 2013, and Troy subsequently informed Page that he could return to work in January 2014. Page Deposition at 100-103. Page returned to work on January 2, 2014 at the same hourly rate of pay, the same number of days/hours per week as he had worked previously, and with a similar route. Def. 56.1 Stmt.

4

¶¶49-50. Plaintiff notes that his pay, work hours, and days of work are set by the Collective Bargaining Agreement ("CBA") between the District and the Union. Pl. 56.1 Stmt. ¶49. In March 2014, Page began a new route with an additional run and the opportunity for additional pay. Def. 56.1 Stmt. ¶50.

### c. Parent Complaint

In approximately April 2014, parents of a female student on Page's bus complained to the District that Page was stalking the student. Def. 56.1 Stmt. ¶51. The student was removed from Page's bus, and he was instructed not to travel on that student's street, High Pasture Lane. *Id.* ¶52. The next day he was found to be present on High Pasture Lane in his school bus. *Id.*

Defendants Troy and Harrigan met with Page to discuss the incident. Def. 56.1 Stmt. ¶53. During the meeting, Page said he was on that street to visit his friend "Gail." *Id.* ¶54. Subsequently, a Suffolk County detective also met with Page regarding the incident. *Id.* ¶57. Defendant Troy and others were present at the meeting.[2] During the second interview, Page admitted that "Gail" had moved to Atlanta and no longer lives at the house on High Pasture Lane. Shteierman Decl., Ex. K at 4-6. The Officer advised Page that if he were to be found on High Pasture Lane again, he would be arrested for stalking. *Id.* at 7-8. No disciplinary action was taken against Page regarding to this incident. *Id.* ¶56.

### d. Disposition of DWI Charge & District's Post-Conviction Actions

On June 29, 2015, Page pled guilty to a violation of VTL §1192.2, operating a motor vehicle with a blood alcohol level in excess of .08%. Shteierman Decl., Ex. L, Certificate of Disposition. He was represented by counsel at the time of his plea. Def. 56.1 Stmt. ¶60. As a

---

[2] Page recorded both meetings without the others' knowledge or consent. Transcripts of the recordings are part of the record. *See* Shteierman Decl., Ex. J, K.

result of the conditional discharge, Page's license was revoked for six (6) months and he was required to use an interlocking ignition device for one (1) year. Shteierman Decl., Ex. L, Certificate of Disposition.

On July 8, 2015, the DMV Bus Unit issued an Article 19-A Conviction Notification notifying the District of Page's conviction, Shteierman Decl. Ex. M, and an Article 19-A Notice of Disqualification advising the District that Page was disqualified from driving a bus effective June 29, 2015 due to the "drug/alcohol offense." *Id.,* Ex. N. On August 24, 2015, the District issued a Statement of Charges in accordance with Section 75 of the New York Civil Service Law. Shteierman Decl. Ex. O, ("Statement of Charges"). The Statement of Charges included a charge for incompetence regarding his conduct leading to the arrest and the fact and terms of his conviction, and a charge for misconduct for *inter alia,* failing to notify the District of the conviction within one (1) day of that conviction as required by VTL §509i(2). *Id.*

A Section 75 hearing was held before Hearing Officer Arthur R. Riegel, Esq. on September 9, 2015. Page appeared at the hearing and was represented by counsel. Def. 56.1 Stmt. ¶64. During the hearing, the District offered Page a position as a substitute cafeteria worker if he would resign as a bus driver. ¶65. He declined that offer. *Id.*

In his Findings and Recommendations dated September 26, 2015, the Hearing Officer found Page culpable on both charges. Shteierman Decl. Ex. P. He recommended that Page be found guilty of Charges 1 and 2, and that his services as a bus driver be terminated. *Id.* at 10. On September 30, 2015, the District's Board of Education passed a resolution adopting the Hearing Officer's Findings and Recommendations and terminating Page from his position of school bus driver. Shteierman Decl. Ex. Q.

## 2. Plaintiff's Additional Statement of Undisputed Facts

Plaintiff's statement of undisputed facts largely pertains to the District's treatment of other bus drivers. Those drivers are James Jones ("Jones"), Rosalie Mastrodominico ("Mastrodomenico"), Barbara Short ("Short"), Jerry Warhoftig ("Warhoftig"), and John Melnikoff ("Melnikoff").

### a. Jones's Disciplinary History

In June 2003, Jones made inappropriate comments to a child with special needs on his bus and was not disciplined by the District. McQuade Decl., Ex. 4. Jones was removed from driving that child's route and he was given a warning. *Id.*

At some unspecified time, Jones was arrested for violations of: VTL §1192.2, operating a motor vehicle with .08 of 1% alcohol; VTL § 1192.3, operating a motor vehicle under the influence of drugs or alcohol, and; VTL §1128.A, failure to stay in single lane. Shteierman Decl., Ex. U. On December 1, 2003, the charges under VTL §§1192.3 and 1128.A were dismissed, and the charge under VTL §1192.2 was reduced to one for driving while ability impaired under VTL §1192.1.[3] *Id.* Jones pled guilty to the VTL §1192.1 charge, was fined $500, and had his license suspended for ninety (90) days. *Id.* Troy wrote a letter to the NYS DMV stating the Jones had not had a violation or accident in his 17 years of driving with the District and indicating that the District "intend[s] to allow Mr. Jones to drive a school bus after his suspension is lifted." McQuade Decl. Ex. 11. During the time his license was suspended, Jones was permitted to work in the District Transportation building as a "Helper in Mechanic

---

[3] VTL §1192.2, Operation of a Motor Vehicle While Intoxicated, is a misdemeanor, while VTL §1192.1, Driving While Ability Impaired, is a violation.

Shop." McQuade Decl., Ex. 6.[4] After his retirement, Jones was hired to work as a Sub Custodian in the Transportation department during the summers of 2014 and 2015. McQuade Decl. Ex. 2.

### b. *Other Bus Drivers with Disciplinary Histories*

Plaintiff provides details about the conduct by, and treatment of, four (4) additional bus drivers for the District. There is no evidence that any of these individuals had an incident that resulted in a license suspension or revocation.

Mastrodomenico has been a bus driver for the District since prior to 2000. Shteierman Decl, Ex. C. Troy Dep. at 69. In October 1994, she closed the bus door on a younger sibling after the older child had boarded and drove away, and in February 1995, she left a sleeping child on bus in below freezing temperatures. McQuade Decl. Ex. 18. In May 2001, Mastrodomenico was convicted of "speed in zone" in Geneva County, *id.,* Ex. 19, but there is no suggestion that her license was affected by this conviction. In 2013, Mastrodomenico was accused of abusing her leave time by using sick time to go on personal vacations after her requests for vacation time were denied. *Id.,* Ex. 17.

Another driver, Short, has been the subject of several complaints/issues including: pulling away from the school without receiving a signal to depart (November 2001, November 2004, June 2005); being "mean" (December 2004); being involved in an accident where a pedestrian walked into the side of the bus (November 2007); improperly allowing a child to cross a main road accompanied by a 5th grade "monitor" (September 2009); and using profanity on an

---

[4] Plaintiff also claims the District did not "enforce" the CBA and suspend Jones from employment during the time his license was suspended. Pl 56.1 Stmt ¶149. Plaintiff's evidentiary support for this fact, however, is the CBA in effect from July 1, 2015 to June 30, 2020, not the Agreement in effect in 2003-04 when Jones's license was suspended. *See* McQuade Decl., Ex. 1.

elementary school run (March 2012). McQuade Decl. Ex. 16. Short was disciplined "verbally," Troy Dep. at 79, and in writing for the November 2004 incident, and an official Letter of Reprimand was placed in her personnel file as a result of the improper crossing incident in September 2009. McQuade Decl., Ex. 16. She was never suspended by the District.

Former driver Warhoftig was warned about poor driving on numerous occasions and faced disciplinary charges of incompetence and insubordination in October 2013. *See* McQuade Aff. Ex. 3 (Warhoftig Statement of Charges). The Statement of Charges include numerous accidents and incidents of unsafe operation of a school bus. He retired prior to the hearing.

Melnikoff was another bus driver formerly employed by the District. He received numerous verbal and written warnings regarding attendance problems. Troy Dep. at 73-74. He was to be terminated, although he may have quit before being formally fired. *Id.* at 75.

## B. Procedural History

Plaintiff filed his complaint on October 23, 2016, asserting nine causes of action against Defendants. He claims that he was discriminated by reason of his race in violation of Title VII and 42 U.S.C. §1981 by the District, and in violation of the NYSHRL by all Defendants. He also claims to have been subjected to harassment and a hostile work environment by the District in violation of Title VII, and by all Defendants in violation of the NYSHRL.

## II. LEGAL STANDARD

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting FED. R. CIV. P. 56(a)). In deciding a motion for summary judgment, "the district court must resolve all ambiguities, and credit all factual inferences that

could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted); *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (the court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."(quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996))).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If the moving party satisfies its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). All facts under consideration must be directly supported by admissible evidence. *See* FED. R. CIV. P. 56(c).

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts" but rather "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original) (internal quotation marks omitted); *see also Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (noting that "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact" (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252) (alterations in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

Moreover, "[w]here the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding that summary judgment is appropriate when the non-moving party has failed to make a sufficient showing on an essential element for which it bears the burden of proof).

With regard to summary judgment in employment discrimination cases specifically, the Second Circuit has said:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. . . Nonetheless, summary judgment

> remains available for dismissal of discrimination claims in cases
> lacking genuine issues of material fact.

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted); *see also Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment"); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## III. DISCUSSION

### A. Race Discrimination

Claims alleging race discrimination brought under Title VII, NYSHRL, and §1981 are all analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 491 (2d Cir. 2010) (Title VII, §§ 1981 and 1983 analyzed under burden-shifting framework); *Bowen-Hooks v. City of N.Y.,* 13 F. Supp. 3d 179, 210 n.19 (E.D.N.Y. 2014) (noting that the "burden of proof and production for employment discrimination claims under Title VII, § 1981, § 1983 and the NYSHRL are identical").

To establish a *prima facie* case of discrimination, plaintiff must show "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb,* 521 F.3d at 138. Plaintiff's burden of establishing a *prima facie* case sufficient to withstand a summary judgment motion is "minimal." *See, e.g., St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Once a plaintiff makes a *prima facie* showing, the burden

shifts to the employer to provide a "legitimate, non-discriminatory reason for its action. *Abrams v. Dep't of Pub. Safety,* 764 F.3d 244, 251 (2d Cir. 2014). Upon such a showing, "the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Id.*

Defendants do not dispute that Plaintiff, a Black man, is a member of a protected class or that he suffered an adverse employment action. They argue, however, that Plaintiff cannot establish a *prima facie* case of racial discrimination because he was no longer qualified for the bus driver position after his DWI conviction and resulting loss of his driver's license. Page summarily states that he was "qualified for the position of Bus Driver as evidenced by his possession of a CDL, his hiring be Defendant District, and his interviews with Defendant Troy and Fallon." Pl. Mem. of Law in Opp. at 9. The undisputed evidence supports Defendants' position.

"[T]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" *Slattery v. Swiss Reins. Am. Corp.,* 248 F.3d 87, 92 (2d Cir. 2001) (quoting *Owens v. N.Y.C. Hous. Auth.,* 934 F.2d 405, 409 (2d Cir. 1991)). A plaintiff is unqualified for a position if he fails to obtain or maintain requirements set forth by the state for that position. *Hernandez v. Hampton Bays Union Free Sch. Dist.,* No. 12-CV-0789, 2015 WL 667844, at *5 (E.D.N.Y. Feb. 13, 2015) (plaintiff by law unqualified where he did not obtain clearance for employment as required by state Department of Education); *As-Salaam v. N.Y.C. Dep't of Parks & Recreation,* No. 02-cv-5646, 2007 WL 2126262, at *6 (E.D.N.Y. July 24, 2007) (plaintiff not "qualified to keep his position" where he failed to complete requirements for permanent appointment under New York Civil Service law). The

Suffolk County Civil Service criteria for the school bus driver position requires a Minimum Qualification, of "[p]ossession of an appropriate license issued by the New York State Department of Motor Vehicles." McQuade Decl., Ex. 21. An additional "special requirement" states that the license "must be maintained throughout employment in this position." *Id.*

There is no dispute that effective June 29, 2015, Plaintiff's license was revoked as a consequence of his guilty plea, and that the DMV Bus Unit provided the District with a Notice of Disqualification confirming that Page was disqualified from acting as a school bus driver. Thus, while Page was qualified for the bus driver position at the time he was hired, his status changed and he was unqualified at the time of his termination. *See generally White v. City of Middletown,* 45 F. Supp. 3d 195, 222 (D. Conn. 2014) (plaintiff's failure to obtain state operator's license rendered him unqualified for position, leading to his demotion); *Christy v. Ken's Beverage, Inc.,* 660 F. Supp. 2d 267, 273 (D. Conn. 2009) (where position required driver's license, plaintiff's DWI "arrest and subsequent driving limitations made her no longer qualified for her job"). As he was clearly unqualified to operate a bus with a revoked license, he was unqualified as a matter of law for the position from which he was terminated.[5]

In other parts of his opposition, specifically regarding his attempt to raise an inference of discrimination, Page points to the fact that Jones was, during the period of his suspension, given a non-driving job and then permitted to return to his bus driving duties. Page does not claim or provide evidence, however, the he was himself "qualified" to perform some other non-driving job in the District, that he requested such a position, and/or that the District denied any such

---

[5] In addition to failing to explain how he could perform his job with a revoked license, Plaintiff also fails to address how he could operate a school bus with an ignition lock device, a separate, year-long consequence of his DWI conviction.

request. Indeed, the undisputed evidence is that the District offered him another position and he turned it down.

Page was no longer qualified to perform the duties required as a bus driver and therefore the District terminated him based on a valid, non-discriminatory reason. As Plaintiff fails to satisfy the qualification prong, he cannot make out a *prima facie* claim for discrimination and his race discrimination claims must be dismissed.

**B. Abandonment of Claims**

Defendants seek summary judgment on all of Plaintiff's claims, including those alleging that Defendants' conduct created a hostile work environment and violated the equal protection clause. Plaintiff's opposition is limited to arguments regarding his race discrimination claims under Title VII, §1981, and the NYSHRL.

In this Circuit, "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Express.*, 766 F.3d 189, 198 (2d Cir. 2014); *accord Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (hostile work environment claims deemed abandoned where plaintiff "fail[ed] to argue that they should survive [defendant's] motion for summary judgment" while arguing against the motion as to his other claims); *Grassel v. Dep't of Educ. of City of N.Y.,* No. 12 CV 1016, 2015 WL 5657343, at *9 (E.D.N.Y. Sept. 24, 2015) ("When a party opposing summary judgment fails to respond to the moving party's argument on a claim, the Court may deem the claim abandoned"); *Thomas v. Atl. Express Corp.*, No. 07 CIV.1978, 2009 WL 856993, at *2 (S.D.N.Y. Mar. 31, 2009) (dismissing plaintiff's claims with prejudice where "[i]n his opposition, [the plaintiff] failed to respond to [defendant's] argument that his due process claim should be dismissed, and therefore that claim

is deemed abandoned"); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y.2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way").

While Defendants expressly moved for summary judgment on Plaintiff's hostile work environment and equal protection claims, Plaintiff did not even reference those claims in his opposition brief, let alone address any of Defendants' arguments. Accordingly, Plaintiff's hostile work environment and equal protection claims are deemed abandoned, and summary judgment on those claims is granted in favor of Defendants.[6]

## IV. CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED**.

                                                                                    /s/
                                                                       Sandra J. Feuerstein
                                                                       United States District Judge

Dated: February 20, 2019
       Central Islip, New York

.

---

[6] In light of the dismissal of Plaintiff's claims, the Court declines to address Defendants' argument that Troy and Harrigan are entitled to qualified immunity.